UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| J&J SPORTS PRODUCTIONS, INC, <br><br>        Plaintiff,<br>    v.<br>JUAN C. LOPEZ BANUELOS,<br><br>        Defendant.<br>_____/ | No. C 12-02244 PJH (LB)<br><br>**REPORT AND RECOMMENDATION**<br><br>[Re: ECF No. 20] |

## INTRODUCTION

Plaintiff J&J Sports Productions, Inc. ("J&J") moves for entry of default judgment in the amount of $114,200.00 against Defendant Juan C. Lopez Banuelos, both individually and doing business as El Kora Restaurant. J&J seeks damages stemming from Mr. Banuelos's alleged violation of 47 U.S.C. § 605 and for conversion of J&J's property. Judge Phyllis Hamilton, the presiding judge in this action, referred J&J's motion to the undersigned for a report and recommendation. Having considered the moving papers, the undersigned RECOMMENDS that J&J's motion be granted in part for the reasons discussed below.[1]

## STATEMENT

J & J Sports Productions, Inc. is a closed-circuit distributor of sports and entertainment

---

[1] The court held a hearing on J&J's motion on March 7, 2013, but Mr. Banuelos did not appear.

programming. *See* Complaint, ECF No. 1, ¶¶ 19, 36[2]. It purchased the right to distribute a boxing match, Manny Pacquiao v. Shane Mosley, WBO World Welterweight Championship Fight Program (the "Program"), including all undercard bouts and fight commentary, via closed circuit television. *Id*. at 4, ¶ 17. J&J then entered into sublicensing agreements with various commercial entities in North America allowing them to publicly exhibit the Program to their patrons. *Id*. at 4-5, ¶ 18. J&J alleges that it has expended substantial monies to transmit the Program to commercial entities in California. *Id*. at 5, ¶ 19.

J&J further alleges that on May 7, 2011 Mr. Banuelos showed the Program at El Kora Restaurant in San Jose, California without first obtaining a license for the Program; instead, Mr. Banuelos specifically directed the employees of El Kora Restaurant to unlawfully intercept and broadcast the Program at El Kora Restaurant or that the actions of the employees of El Kora Restaurant are directly imputable to Mr. Banuelos by virtue of his acknowledged responsibility for the actions of El Kora Restaurant. *Id*. at 4, ¶ 14. J&J alleges that Mr. Banuelos did so with full knowledge that the Program was not to be received and exhibited by entities unauthorized to do so, and that his actions were willful and for purposes of direct or indirect commercial advantage or private financial gain. *Id*. at 5, ¶ 21.

In support of these allegations J&J has submitted an affidavit from a private investigator, John Poblete, who observed the Program at El Kora Restaurant on May 7, 2011. Poblete Declaration, ECF No. 20-3 at 2. Mr. Poblete observed one large projection screen next to the bar, one smaller flat screen television in the first dining area, another large projection screen in the second dining area, and another smaller flat screen on the second dining area showing the Program. *Id*. At the time he entered the establishment, Mr. Poblete observed the tenth round of the Program's undercard match between fighter Kelly Pavlik and Alfonso Lopez on the television. *Id*. During the seven minutes he was present, Mr. Poblete took three headcounts of 35, 36, and 38 individuals and he estimates that the restaurant has a capacity for over 100 individuals. *Id*. at 3. He did not report

---

[2] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page numbers at the top of the page.

C 12-02244 PJH (LB)
REPORT AND RECOMMENDATION

2

seeing either a cable box or a satellite dish. *See id*. at 2-3.

On May 4, 2012, J&J filed a complaint in this Court based on the above allegations and asserting the following four claims: (1) violation of the Federal Communications Act of 1934, as amended, 47 U.S.C. § 605, *et seq*.; (2) violation of The Cable & Television Consumer Protection and Competition Act of 1992, as amended, 47 U.S.C. § 553, *et seq*.; (3) conversion under California state law; and (4) violation of California Business & Professions Code § 17200, *et seq*. *See id*. at 4-9, ¶¶ 16-44.

Mr. Banuelos failed to file a responsive pleading or otherwise appear, and the Clerk of the Court entered default pursuant to Federal Rule of Civil Procedure 55(a) on December 26, 2012. Entry of Default, ECF No. 19. On February 1, 2013, J&J filed an application for default judgment supported by a memorandum of law seeking an award of statutory and enhanced damages in the amount of $110,00 plus $4,200 in damages for the tort of conversion. *See* Appl. for Default J., ECF No. 20; Mem. of P. & A. Supp. Appl. for Default J., ECF No. 20-1 ("Motion"). Judge Phyllis Hamilton referred J&J's motion for default judgment to the undersigned for a report and recommendation. Order of Reference, ECF No. 21. J&J served Mr. Banuelos with the motion for default judgment by mail. Proofs of Service, ECF No. 20 at 4, ECF No. 20-1 at 23. Mr. Banuelos has not appeared or responded to J&J's motion, and the deadline for opposing the motion has passed. *See* N.D. Cal. Civil L.R. 7-3(a).

## ANALYSIS

### I. JURISDICTION

Courts have an affirmative duty to examine their own jurisdiction – both subject matter jurisdiction and personal jurisdiction – when entry of judgment is sought against a party in default. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). The court has subject matter jurisdiction over this action because the complaint seeks relief pursuant to causes of action authorized by 47 U.S.C. §§ 553 & 605. *See* 28 U.S.C. § 1331. A plaintiff bears the burden of establishing personal jurisdiction over a defendant. *See Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986). In the complaint, J&J alleges that Mr. Banuelos is the owner, operator, licensee, permitee, person in charge, and/or individual with dominion, control, oversight and management of El Kora Restaurant, which is located at 1527 Alum Rock Avenue, San Jose, California, an address within this district.

1    Complaint, ECF No. 1 at 3, ¶ 8.  The causes of action arise out of Mr. Banuelos's alleged operation

2    of El Kora Restaurant.  Because the violations arise out of Mr. Banuelos's alleged business conduct

3    in the district, personal jurisdiction over him is proper.

4    Finally, the court must assess whether Mr. Banuelos was properly served with notice of this

5    action.  Upon review of the proof of service, the court finds that Plaintiff effected service of process

6    in conformity with Federal Rule of Civil Procedure 4(c) and 4(e)(1) and California Civil Procedure

7    Code section 415.20(b).  *See* Executed Summons, ECF No. 16.

## II.  DEFAULT JUDGMENT

9    Pursuant to Federal Rule of Civil Procedure 55(b), the court may enter default judgment against

10   a defendant who has failed to plead or otherwise defend an action.  "The district court's decision

11   whether to enter default judgment is a discretionary one."  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092

12   (9th Cir. 1980).  The Ninth Circuit has provided seven factors for consideration by the district court

13   in exercising its discretion to enter default judgment: (1) the possibility of prejudice to the plaintiff;

14   (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of

15   money at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether

16   default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil

17   Procedure favoring decisions on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir.

18   1986).  When assessing these factors, all factual allegations in the complaint are taken as true, except

19   those with regard to damages.  *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir.

20   1987).

21   For the reasons discussed below, the majority of these factors support default judgment on one of

22   J&J's claims.  For one, because Mr. Banuelos has not answered the complaint or otherwise appeared

23   in this action, the possibility of a dispute concerning material facts is unknown if the motion for

24   default judgment were to be denied.  For the same reason, if the motion were denied, J&J would

25   almost certainly be left without a remedy.  *See Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d

26   1172, 1177 (C.D. Cal. 2002).  This is especially true when J&J properly served Mr. Banuelos and

27   where there is no evidence in the record that Mr. Banuelos's failure to appear and otherwise defend

28   this action was the result of excusable neglect.

C 12-02244 PJH (LB)
REPORT AND RECOMMENDATION
4

Two factors, though, weigh against default judgment. First, J&J seeks the maximum possible statutory damages in this action. In this regard, J&J's damages request is disproportionate to the harm alleged. *See J&J Sports Prods., Inc. v. Wood*, No. 11-cv-1160 LJH (JSC), 2011 WL 6961334, at *3 (N.D. Cal. Nov. 2, 2011); *Joe Hand Promotions Inc. v. Meola*, No. 10-4781 CW (JCS), 2011 WL 2111802, at *4, (N.D. Cal. Apr. 22, 2011). Second, strong public policy favors decisions on the merits. *Eitel*, 782 F.2d at 1472.

The court must also examine the merits of J&J's substantive claims and the sufficiency of the evidence. These factors essentially require a plaintiff to state a claim on which it may recover. *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). J&J's motion seeks default judgment against Mr. Banuelos for (1) violation of 47 U.S.C. § 605; (2) violation of 47 U.S.C. § 553; and (3) conversion.[3]

47 U.S.C. § 605 "prohibits commercial establishments from intercepting and broadcasting to its patrons *satellite* cable programming." *J&J Sports Prods., Inc. v. Mosley*, No. 10-5126 CW (EMC), 2011 WL 2066713, at *3 (N.D. Cal. Apr. 13, 2011) (emphasis in original). In contrast, 47 U.S.C. § 553 "prohibits a person from intercepting or receiving or assisting in intercepting or receiving any communications service offered over a *cable system*." *Id*. (emphasis in original). "A signal pirate violates section 553 if he intercepts a cable signal, [but] he violates [section] 605 if he intercepts a satellite broadcast." *J&J Sports Prods., Inc. v. Manzano*, No. 08-01872 RMW, 2008 WL 4542962, at *2 (N.D. Cal. Sept. 29, 2008). "Plaintiff may not recover under both 47 U.S.C. § 605 and 47 U.S.C. § 553." *J&J Sports Prods. v. Ro*, No. 09-02860 WHA, 2010 WL 668065, at *3 (N.D. Cal. Feb. 19, 2010).

In its motion, J&J seeks default judgment for both a violation of 47 U.S.C. § 605 and § 553, claiming that it cannot tell which damages scheme is appropriate because Mr. Banuelos did not answer the complaint. Motion, ECF No. 20-1 at 8. J&J, however, does not discuss § 553 in its

---

[3] As described above, J&J's complaint also included a claim for violation of California Business & Professions Code § 17200, *et seq*. Because J&J's motion for default judgment does not request default judgment on this claim or otherwise address this claim in any way, *see* Motion, ECF No. 20 at 2-3, the court considers the claim abandoned, *see J&J Sports Productions, Inc. v. Torres*, No. 10-5086 SC, 2011 WL 3739613, at *2 (N.D. Cal. Aug. 24, 2011).

1  itemized damages calculation; instead, it seeks statutory and enhanced damages only under § 605.
2  *Id.* In so doing, J&J contends that damages under § 605 are proper because "[it] should not be
3  prejudiced because it cannot isolate the precise means of signal transmission [Mr. Banuelos] used
4  . . . ." Motion, ECF No. 20-1 at 8. Beyond this single statement, J&J does not explained why it is
5  entitled to relief under § 605 rather than § 553.[4] Indeed, as Judge Alsup explained in a similar case:
6  "Plaintiff argues that it 'should not be prejudiced' because it cannot determine the means of
7  transmission, however, if plaintiff wanted to prove this, they could have filed a third party subpoena
8  or requested an order for inspection." *Ro*, 2010 WL 668065, at *3.

9  It is unlikely that a defendant would use *both* a cable box and a satellite dish to broadcast a
10 single program simultaneously. *See Wood*, 2011 WL 6961334, at *3; *J&J Sports Prods., Inc. v.
11 Seldner*, No. 10-5137 THE, 2011 WL 2650961, at *2 (N.D. Cal. Jul 6, 2011); *J&J Sports Prods.,
12 Inc. v. Guzman*, No. 08-5469 MHP, 2009 WL 1034218, at *2 (N.D. Cal. Apr.16, 2009). Here, Mr.
13 Poblete did not state whether he saw a satellite dish or a cable box. *See* Poblete Declaration, ECF
14 No. 20-3 at 2. In this situation, "courts have found that as between the two it is less likely that a
15 satellite dish was used because 'a cable box is more easily hidden.'" *Wood*, 2011 WL 6961334, at
16 *3 (citing *Guzman*, 2009 WL 1034218, at *2; *Mosley*, 2011 WL 2066713, at *3; *Ro*, 2010 WL
17 668065, at *3. Accordingly, the court concludes that J&J has failed to state a claim for relief under
18 § 605 and recommends that the motion for default judgment be denied as to that claim.

19 J&J has, though, sufficiently alleged claim under 47 U.S.C. § 553. It has shown through Mr.
20 Poblete's affidavit that Mr. Banuelos was showing the Program without permission and, as
21 discussed above, § 553 is the more likely violation. *See J&J Sports Prods. Inc. v. Man Thi Doan*,
22 08-00324 RMW, 2008 WL 4911223, at *3 (N.D. Cal. Nov. 13, 2008).

23 J&J also alleged a claim for conversion under California Civil Code § 3336. The elements of a
24 conversion claim in California are "(1) ownership or right to possession of property, (2) wrongful
25 disposition of the property right and (3) damages." *G.S. Rasmussen & Assoc. v. Kalitta Flying Serv.*,

---

[4] The court notes that § 605 has a higher minimum damages award than does § 553 and a requirement for attorneys' fees and costs (as opposed to the discretionary fees under § 553(c)(2)(C)).

C 12-02244 PJH (LB)
REPORT AND RECOMMENDATION
6

958 F.2d 896, 906 (9th Cir. 1992). J&J alleges ownership over the nationwide distribution rights for the Program, Mr. Banuelos's misappropriation of this ownership right, and damages based on the denial of the license fee to which J&J would otherwise have been entitled. *See* Complaint, ECF No. 1 at 4-7, ¶¶ 17-32; Motion, ECF No. 20-1 at 20 (alleging that the sublicense fee for El Kora Restaurant would have been $4,200).

After a default has been entered by the court clerk, the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages. *Televideo*, 826 F.2d at 917-18. J&J must prove all damages sought in the complaint. *See Phillip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003). J&J's unauthenticated allegation that the sublicense fee for El Kora Restaurant would have cost $4,200 does not constitute proof of damages.[5] J&J has not sufficiently alleged damages and therefore fails to state a claim for conversion under California Civil Code § 3336.

J&J has adequately stated a claim under § 553. And because the majority of the *Eitel* factors weigh in favor of a default judgment, the undersigned recommends that J&J's motion for default judgment be granted in part.

### III. SCOPE OF RELIEF

#### A. Statutory Damages

J&J seeks a total of $110,000 in damages by arguing that it is entitled to statutory damages under 47 U.S.C. § 605(e)(3)(C)(I) as well as enhanced damages under 47 U.S.C. § 605(e)(3)(C)(ii) in the statutory maximum amount of $110,000. Motion, ECF No. 20-1 at 11-19. In light of the above conclusion that J&J has failed to state a claim for relief under § 605, the court instead analyzes J&J's request for statutory damages under § 553. *See, e.g., Wood*, 2011 WL 6961334, at *4-6; *J&J Sports Prods., Inc. v. Magat*, No. C 11-01149 WHA, 2011 WL 4831206, at *2-3 (N.D. Cal. Oct. 12, 2011).

Under 47 U.S.C. § 553(c)(3)(A)(ii), a plaintiff is entitled to damages of no less than $250, but no more than $10,000, in an amount the court considers just. "The Court may also enhance the award

---

[5] *Cf. J&J Sports Prods., Inc. v. Garcia*, No. C 11-05429 YGR (LB), ECF No. 18 at 6 (relying on a sworn affidavit to substantiate the claim that the sublicense fee for a venue the size of Defendant's establishment would have been $2,200).

of damages by up to $50,000 if it finds that the conduct was 'committed willfully and for the purposes of commercial advantage or financial gain.'" *Seldner*, 2011 WL 2650961, at *1 (quoting 47 U.S.C. § 553(c)(3)(B)). In determining damages under this section, courts consider a variety of factors including "use of a cover charge, increase in food price during programming, presence of advertising, number of patrons, number of televisions used, and impact of offender's conduct on claimant." *J&J Sports Prods., Inc. v. Concepcion*, No. 10-5092 WHA, 2011 WL 2220101, at *4 (N.D. Cal. June 7, 2011). Courts also consider whether a defendant is a repeat offender. *See J&J Sports Prods., Inc. v. Paniagua*, No. 10-05141 LHK, 2011 WL 996257, at *2 (N.D. Cal. Mar. 21, 2011). In addition, courts consider the actual cost of a commercial license, defendant's incremental profits, and the need to deter piracy. *See Mosley*, 2011 WL 2066713, at *5 (calculating actual losses based on the license fee and an estimate of defendant's potential profits); *J&J Sports Prods. v. Ho*, 10-01883 LHK, 2010 WL 3912179, at *1 (N.D. Cal. Oct. 5, 2010) (stating that "[a] traditional method of determining statutory damages is to estimate either the loss incurred by the plaintiff or the profits made by the defendants") (internal citations omitted).

Mr. Poblete's affidavit states that he paid a $5.00 cover charge as a prerequisite for entrance on the night of the Program. Poblete Declaration, ECF No. 20-3 at 2. The declaration states that he observed four televisions, including two large projectors, showing the program and that he noted boxing event posters on the interior walls. *Id.* Mr. Poblete estimated El Kora Restaurant to hold over 100 persons, although his three headcounts indicated that there were 35, 36, and 38 individuals present. *Id.* at 3. There is no allegation in the complaint and no evidence in the record of increased food or beverage prices as a result of the Program. *Id.* at 2-3. In addition, there is no allegation that Mr. Banuelos is a repeat offender.

Mr. Banuelos's profit thus appears to have been approximately $190 from the cover charge, plus an unknown amount for food and beverages sales. Courts in the Northern District commonly award a plaintiff statutory damages in the amount of $1,000 where the apparent financial benefit to the defendant does not, as here, exceed $1,000. *See, e.g., Kingvision Pay-Per-View, Ltd. v. Chavez*, No. C 00-2270 CRB, 2000 WL 1847644, at *3 (N.D. Cal. December 11, 2000) (imposing $1,000 statutory fine where 40 persons were present in defendant's establishment and defendant had

1 charged a $10 cover); *Garden City Boxing Club, Inc. v. Lan Thu Tran*, No. 05-05017 RMW, 2006
2 WL 2691431, at *1-2 (N.D. Cal. Sept. 20, 2006) (awarding $1,000 in statutory damages based on
3 plaintiff's actual losses under § 605 when 40 patrons were present and a $10 cover charge was
4 imposed). Based on these facts and this record, the undersigned recommends awarding J&J $1,000
5 in statutory damages under 47 U.S.C. § 553(c)(3)(A)(ii).

### B. Enhanced Damages

J&J also seeks enhanced damages under 47 U.S.C. § 605(e) (3)(C)(ii), which the court will instead analyze under 47 U.S.C. § 553(c)(3)(B). *See*, *e.g.*, *Wood*, 2011 WL 6961334, at *6; *Magat*, 2011 WL 4831206, at *3. J&J seeks the maximum amount of enhanced damages, in this case $50,000. Motion, ECF No. 20-1 at 14-19. Where "the violation was committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain," the court has discretion to enhance the damages. 47 U.S.C. § 553(c)(3)(B). J&J argues that it is impossible that Mr. Banuelos's signal was mistakenly, innocently, or accidentally intercepted. Motion, ECF No. 20-1 at 14-15. The court agrees that the evidence supports an inference that Mr. Banuelos willfully intercepted and exhibited the Program. *See Joe Hand Promotions, Inc. v. White*, C 11-01331 CW (JSC), 2011 WL 4406354 (N.D. Cal. Aug. 2, 2011), *report and recommendation adopted*, 2011 WL 4406351 (N.D. Cal. Sept. 21, 2011).

Courts in this district have found a $5,000 enhancement appropriate when a modest number of patrons was present during the intercepted telecast and the establishment imposed a cover charge. *See Lan Thu Tran*, 2006 WL 2691431, at *1-2 (awarding $5,000 in enhanced damages under section 605 when 40 patrons were present and a $10 cover charge was imposed); *Chavez*, 2000 WL 1847644, at *3 (imposing a $5,000 enhancement under section 605 when 40 patrons were present and a $10 cover charge was charged). Even when an individual stood outside an establishment actively recruiting people to come inside and watch the telecast, the court deemed a $5,000 enhancement appropriate. *See J & J, Inc. v. Montecinos*, No. C 01-4242 MMC, 2002 WL 1735384 (N.D. Cal. July 25, 2002) (awarding $5,000 in enhanced damages under section 605).

Mr. Banuelos financially benefitted from the illegal interception by avoiding paying the licensing fee (in an amount unknown to the court), collecting a $5.00 cover charge from at least 38

UNITED STATES DISTRICT COURT
For the Northern District of California

persons, and presumably attracting additional patrons who spent more time in the establishment watching the Program. The cover charge, unusually large size of the televisions showing the Program, and the presence of posters advertising the boxing event indicate affirmative action for the purpose of financial gain. Although J&J failed to provide evidence of the amount of the licensing fee, the court considers these other factors in crafting an enhancement. In light of Defendants' affirmative misconduct and in order to deter future willful violations, the Court recommends imposing an enhanced damages award of $5,000.

## CONCLUSION

Based on the foregoing, the undersigned RECOMMENDS that J&J's motion for default judgment be GRANTED as to its claim under 47 U.S.C. § 553 (Count II) and DENIED as to its claim under 47 U.S.C. § 605 (Count I) and for conversion (Count III). The undersigned RECOMMENDS that judgment be entered in favor of J&J against Mr. Banuelos, individually, and doing business as El Kora Restaurant. The undersigned FURTHER RECOMMENDS that J&J be awarded a total of $6,000 in statutory damages under 47 U.S.C. § 553(c)(3)(B). The court notes that J&J did not seek attorneys' fees, which are discretionary under § 553. *See* 47 U.S.C. § 553(c)(2)(c).

J&J shall serve a copy of the report and recommendation on Mr. Banuelos within three days from the filing date of this order and shall file a proof of service thereafter.

Any party may file objections to this report and recommendation with the district judge within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Civ. L.R. 72-3. Failure to file an objection may waive the right to review of the issue in the district court.

**IT IS SO ORDERED.**

Dated: March 7, 2013

LAUREL BEELER
United States Magistrate Judge